44 A.3d 380

**UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION**

v.

**Giuseppina MUTI, Personal Representative of the Estate of Elliott Muti, et al.**

**No. 42, Sept. Term, 2011.**

Court of Appeals of Maryland.

May 3, 2012.

Derek M. Stikeleather (Susan T. Preston and Janet A. MacDonald of Goodell, DeVries, Leech & Dann, LLP, Baltimore, MD), on brief, for petitioner/cross-respondent.

Ryan S. Perlin (Julia R. Arfaa of Salsbury, Clements, Bekman, Marder & Adkins, LLC, Baltimore, MD), on brief, for respondents/cross-petitioners.

Michael F. Smith, Esq., The Smith Appellate Law Firm, Ellicott City, MD, for Amicus Curiae brief of Maryland Defense Counsel, Inc.

George S. Tolley, III, Esq., Dugan, Babij & Tolley, LLC, Timonium, MD, for Amicus Curiae brief of Maryland Association for Justice.

Argued before BELL, C.J., HARRELL, GREENE, BARBERA, LAWRENCE F. RODOWSKY (retired, specially assigned), IRMA S. RAKER (retired, specially assigned) and ALAN M. WILNER (retired, specially assigned).

RODOWSKY, J.

Presented here are claims asserted under the Wrongful Death Statute, Maryland Code (1974, 2006 Repl.Vol.), §§ 3–901 through 3–904 of the Courts and Judicial Proceedings Article (CJ). The plaintiffs are the widow of the decedent and the adult children of her marriage with the decedent. They did not identify in their complaint, or notify, a stepson whom the decedent had adopted during a prior marriage. Well over three years have elapsed since the decedent's death, without the adopted son's joining, or seeking to join in, the action.

The decedent, Elliott Muti (Elliott), died on March 4, 2005. His widow is Giuseppina Muti (Giuseppina), and the children of that marriage are Thomas G. Muti (Tom), born August 1, 1978, and David D. Muti (David), born March 12, 1985. We shall refer to Giuseppina, Tom, and David collectively as the Plaintiffs or the Mutis. The stepson adopted by Elliott during a previous marriage to a Bertha Muti is Ricky Muti (Ricky). Because the Plaintiffs omitted Ricky as a "use" plaintiff when asserting their wrongful death claims, the Circuit Court for Baltimore City dismissed the Plaintiffs' wrongful death claims.

We must decide whether:

1. To dismiss with prejudice the wrongful death claims of the Plaintiffs, as the Defendant requests; or

2. To allow the Plaintiffs' claims to proceed

a. after permitting the Plaintiffs to amend, under a relation back theory, by naming Ricky as a use plaintiff, as the Plaintiffs request; or

b. without naming Ricky as a use plaintiff, as alternatively requested by the Plaintiffs.

### Facts and Procedural History

According to Giuseppina's February 2, 2009 deposition testimony, Ricky was ten or eleven years old in 1977 and living with Bertha in Edgewood. He left that home when he was eighteen, and Giuseppina has no idea where he might be living. On deposition, Tom testified that he was a young child when he last saw Ricky, that he does not know where Ricky, or Bertha, might be living or how to contact them. Ricky did not visit his adoptive father in the hospital or come to the funeral. David testified that he has never laid eyes on Ricky.

Over thirty-four months after Elliott Muti died, Giuseppina, as personal representative of Elliott's estate, but not individually, asserted a medical malpractice claim in the Health Care Alternative Dispute Resolution Office (HCADRO) against University of Maryland Medical Systems Corporation (UMMSC or the Defendant). That claim was amended on February 21, 2008, to add claims for wrongful death by Giuseppina, Tom,

and David in separate counts. March 4, 2008, marked the third anniversary of Elliott's death. In August 2008, the Plaintiffs waived arbitration, and HCADRO transferred "this case" to the Circuit Court for Baltimore City.[1] UMMSC served interrogatories on Giuseppina in November 2008. Answers to these interrogatories listed Ricky as a child, by adoption, of Elliott.

On August 31, 2009, UMMSC moved to dismiss the complaint for failure to join a necessary party, Ricky. The Defendant argued that the wrongful death act required "one action by all wrongful death beneficiaries against the same defendant" and that "all wrongful death beneficiaries must assert their claims within three years as a condition precedent to maintenance of their claims." The argument is derived from two parts of the statute, CJ § 3–904(f) and (g).

Subsection (f) provides that "[o]nly one action under this subtitle lies in respect to the death of a person."

Subsection (g) reads, in relevant part:

"(1) Except [in certain occupational disease cases], an action under this subtitle shall be filed within three years after the death of the injured person."

These subsections operate in the context of the following relevant provisions of § 3–904.

"(a) *Primary beneficiaries.*—(1) [With exceptions not applicable here], an action under this subtitle shall be for the benefit of the wife, husband, parent, and child of the deceased person.

. . . .

"(c) *Damages to be divided among beneficiaries.*—(1) In an action under this subtitle, damages may be awarded to

---

1. In that court, a one-count complaint initially was filed by Giuseppina, individually and as personal representative, and by Tom and David. Thereafter, the Plaintiffs filed a four count amended complaint in the circuit court, alleging a survival action and their respective claims for wrongful death, but again omitting any reference to Ricky. The Defendant does not raise any issue based on the Plaintiffs' refinement of their pleadings in the circuit court.

the beneficiaries proportioned to the injury resulting from the wrongful death.

"(2) Subject to [the cap on non-economic damages], the amount recovered shall be divided among the beneficiaries in shares directed by the verdict.

"(d) *Damages—Death of spouse, minor child or parent, unmarried children who are not minors.*—The damages awarded under subsection (c) of this section are not limited or restricted by the 'pecuniary loss' or 'pecuniary benefit' rule but may include damages for mental anguish, . . . where applicable for the death of:

"(1) A spouse;

"(2) A minor child;

"(3) A parent of a minor child; or

"(4) An unmarried child who is not a minor child[.]"

Also applicable to an action involving a claim for damages for wrongful death is Maryland Rules of Procedure, Rule 15–1001 that, in relevant part, provides:

"(b) **Plaintiff**

"If the wrongful act occurred in this State, all persons who are or may be entitled by law to damages by reason of the wrongful death shall be named as plaintiffs whether or not they join in the action. The words 'to the use of' shall precede the name of any person named as a plaintiff who does not join in the action.

"(c) **Notice to Use Plaintiff**

"The party bringing the action shall mail a copy of the complaint by certified mail to any use plaintiff at the use plaintiff's last known address. Proof of mailing shall be filed as provided in Rule 2–126.

"(d) **Complaint**

"In addition to complying with Rules 2–303 through 2–305, the complaint shall state the relationship of each plaintiff to the decedent whose death is alleged to have been caused by the wrongful act."

Prior to the hearing on the Defendant's motion, the Plaintiffs never amended their complaint to name Ricky as a use plaintiff. At that hearing on October 2, 2009, the attorney who argued for the Plaintiffs took responsibility for not naming Ricky as a use plaintiff.[2] Plaintiffs' counsel represented to the circuit court that "[w]e have been unable to locate [Ricky] since the beginning of the litigation," and that the Plaintiffs would amend, by relation back, if they found Ricky alive.

The circuit court dismissed the complaint, based on the violation of Rule 15–1001(b) arising from the failure to name Ricky as a use plaintiff. It pointed out that the Plaintiffs had not filed any affidavit affirming that they were unable to locate Ricky. The court said that, in any event, even if Ricky were unlocatable, the Rule required the Plaintiffs to put "everyone" on notice of Ricky's existence (or possible existence). The circuit court also granted a UMMSC motion for summary judgment that had been filed against the survival claim.

The Plaintiffs appealed to the Court of Special Appeals. That court found that they had violated Rule 15–1001, but held that the circuit court had abused its discretion by denying the Plaintiffs leave to amend without first considering whether Ricky would be prejudiced by the denial. *Muti v. UMMSC,* 197 Md.App. 561, 578–79, 14 A.3d 1179, 1189 (2011). Dismissal of the wrongful death claims was vacated, summary judgment on the survival claim was reversed, and the action was remanded to the circuit court.

This Court granted UMMSC's petition for certiorari and the Plaintiffs' cross-petition. The former seeks review of the vacating of the dismissal of the wrongful death claims, and the latter asks this Court "to determine the appropriate factors to be considered by a trial court when formulating a consequence for the inadvertent failure [sic] to name a potential wrongful death beneficiary."

---

**2.** The individual attorney who argued on the motion did not argue for the Plaintiffs in this Court or in the Court of Special Appeals.

Two amici curiae briefs have been filed, one by the Maryland Association for Justice, in support of the Plaintiffs, and the other by Maryland Defense Counsel, Inc., in support of UMMSC.

## Positions of Parties

UMMSC contends that the wrongful death statute's one-action provision required the Plaintiffs to name Ricky as a use plaintiff within three years of Elliott's death and that compliance with that requirement is a condition precedent to the Plaintiffs' ability to continue their wrongful death claims. The one-action condition, UMMSC asserts, operates in conjunction with the condition precedent requiring a wrongful death plaintiff to sue within three years of the decedent's death. The argument seems to be that, if the entire package is not assembled within three years, no part of the package may proceed.

The Plaintiffs deny that CJ § 3–904(g) ("Only one action under this subtitle lies in respect to the death of a person") substantially affects their claims, inasmuch as UMMSC will be subject to but one-action, either with or without Ricky as a use plaintiff. Ricky, the Plaintiffs say, may be added as a use plaintiff more than three years after Elliott's death. In any event, the requirement that Ricky be identified as a use plaintiff arises solely from Rule 15–1001 and is a procedural, not a substantive, requirement. Thus, say the Plaintiffs, analysis of the sanction for a violation of Rule 15–1001 is governed by Rule 1–201(a) which reads:

"(a) **General.** These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. When a rule, by the word 'shall' or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule."

Under a totality of the circumstances standard, the Plaintiffs assert, dismissal was an abuse of discretion.

The Defendant's reply is that Rule 15–1001(b) makes explicit what is implicit in CJ § 3–904(f) and that a rule of procedure may create a condition precedent. Alternatively, and assuming *arguendo* that relation back is permitted, dismissal of Plaintiffs' wrongful death claim is appropriate under the totality of the circumstances standard of Rule 1–201(a), particularly because of the prejudice to UMMSC arising from the additional discovery required by the late inclusion of another plaintiff.

## Discussion

### Review of the Law

Maryland's wrongful death statute was first enacted by Chapter 299 of the Acts of 1852. It created a cause of action, brought in the name of the State, for the use of the spouse, parent, or child of the person tortiously killed—today's primary beneficiaries under CJ § 3–904(a)(1). The damages under the 1852 Act were "the pecuniary loss sustained by the parties entitled to the benefit of the action." *Stewart v. United Elec. Light & Power Co.*, 104 Md. 332, 348, 65 A. 49, 53 (1906). Section 2 of the 1852 Act directed that the recovery "be divided amongst the before mentioned parties, in such shares as the jury by their verdict shall find and direct." Section 3 of the Act required the plaintiff to furnish particulars of the nature of the claim and of the persons on whose behalf the action was brought.[3] It was not until 1969, by Chapter 352 of the Acts of that year, that the earliest provision for solatium damages was enacted. Pecuniary loss, if

---

3. Section 3 read as follows:

"*And be it enacted,* That in every such action, the plaintiff on the record shall be required, together with the declaration, to deliver to the defendant or his attorney, a full particular of the person or persons, for whom and on whose behalf such action shall be brought, and of the nature of the claim, in respect of which, damages shall be sought to be recovered."

any, and solatium damages are the components of the individual shares required by present CJ § 3–904(c).

The 1852 Act also contained two provisos, to wit:

*"Provided, always,* That not more than one action shall lie for and in respect of the same subject matter of complaint; and that every such action shall be commenced within twelve calendar months after the death of the deceased person."

Today, these provisos are found, respectively, in subsections (f) and (g) of § 3–904.

The first Rules of Procedure addressing wrongful death actions were part of the monumental project undertaken by the Rules Committee to cull procedural provisions from the Maryland Code and to embody them in Rules of Procedure adopted under this Court's constitutional authority. The project culminated in the adoption of the former Special Proceedings Rules presented in the Twentieth Report of the Rules Committee, effective January 1, 1962, followed by the enactment by the General Assembly of Chapter 36 of the Acts of 1962. That legislation repealed, *inter alia,* the provisions for a bill of particulars [4] and for titling the action in the name of the State.

The Special Proceeding Rules included Subtitle Q, "Death by Wrongful Act," which, in relevant part, provided:

### "Rule Q40. Application of Rule.

"The Maryland Rules shall apply to all actions for wrongful death brought under Code, Article 67 and under Article 101, Section 58, whether the cause of action arose in this State or elsewhere.

### "Rule Q41. Plaintiffs.

"a. *Cause of Action in This State.*

"Where such cause of action arose in this State all persons who are or may be entitled to damages by reason thereof shall be named as plaintiffs whether or not they

---

4. Particulars were required in 1962 by Code (1957), Article 67, § 5.

joined in bringing the action: however, the names of those who did not join in bringing the action shall be preceded by the words: 'to the use of . . . .'

. . . .

## "Rule Q42. Necessary Allegations.

"In addition to all other facts required to be pleaded, the original pleading of the plaintiff in such action shall state the plaintiff's relationship to the decedent, his right to bring the action, the names and last known addresses of all persons who are or may be entitled by law to recover damages and their relationship.

## "Rule Q43. Intervention.

"Any person claiming to be entitled to damages in such action may intervene as a party plaintiff at any time prior to verdict or judgment *nisi.*"

Further relevant revisions of the Rules applying to wrongful death actions were made when the former Special Proceedings Rules were repealed. Present Rule 15–1001 was adopted, effective January 1, 1997, as part of the comprehensive revision of the Maryland Rules that commenced in 1984. *See* 22 Md. Reg., Issue 24, 1 (Nov. 24, 1995) (publishing the 132nd Report of the Rules Committee), and 23 Md. Reg., Issue 14 (July 5, 1996) (publishing the order of this Court adopting that Report). The 1997 changes added the requirement in Rule 15–1001(c) for notices to all use plaintiffs and for filing proof of service.

## The Condition Precedent Issue

 Since at least *State, u/o Stasciewicz v. Parks,* 148 Md. 477, 479–82, 129 A. 793, 795 (1925), this Court has construed the time limit in the wrongful death statute to be a substantive provision, that is, a condition precedent to asserting the statutorily created cause of action. *See, e.g., Trimper v. Porter–Hayden,* 305 Md. 31, 501 A.2d 446 (1985) (superseded in part by statute, § 3–904(g)(2), regarding occupational

disease);[5] *Slate v. Zitomer*, 275 Md. 534, 542, 341 A.2d 789, 794 (1975), *cert. denied*, 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976). A plaintiff who does not assert the cause of action within the statutorily prescribed time, now three years, loses the right to sue a defendant who is not estopped to assert the defense. *See Chandlee v. Shockley*, 219 Md. 493, 502–03, 150 A.2d 438, 443 (1959). Even infancy of the plaintiff when a wrongful death claim was asserted and settled by a parent of the plaintiff does not toll the triggering of the timeliness condition. *See Waddell v. Kirkpatrick*, 331 Md. 52, 65, 626 A.2d 353, 359 (1993). *See also Georgia–Pacific Corp. v. Benjamin*, 394 Md. 59, 77–87, 904 A.2d 511, 522–27 (2006) (contrasting conditions precedent with statute of limitations).

Here, UMMSC seeks to have us construe the one-action provision, § 3–904(f), as a condition precedent, but with a significant twist. Ordinarily it is the wrongful death plaintiff who fails to sue timely who is out of court. UMMSC asks us to hold that those plaintiffs who timely sued in this case are also out of court because there may be another living child of Elliott's who may attempt to sue, leaving UMMSC theoretically exposed to more than one wrongful death action. This argument considers the statute to compel that a wrongful death action be a unitary action by all actual or potential beneficiaries.

That is not the construction placed by this Court on the 1852 statute's one-action provision in *Deford v. State, u/o Keyser*, 30 Md. 179 (1869). The deceased, Mrs. Keyser, a widow, had nine children, all of whom were alive when the reported wrongful death suit was filed by a next friend on

---

**5.** Section 3–904(g)(2) provides:

"(2)(i) In this paragraph, 'occupational disease' means a disease caused by exposure to any toxic substance in the person's workplace and contracted by a person in the course of the person's employment.

"(ii) If an occupational disease was a cause of a person's death, an action shall be filed:

"1. Within 10 years of the time of death; or

"2. Within 3 years of the date when the cause of death was discovered, whichever is the shorter."

behalf of four infant children and an adult daughter. *Id.* at 181, 184. The tortfeasor argued that, because there were children who had not joined in the declaration and who were not named in the particulars, "the plaintiff cannot recover under the pleadings ... because of such non-joinder." *Id.* at 184. This Court, speaking through Judge Alvey, rejected the argument, saying:

"The action is brought in the name of the State as legal plaintiff, for the use of such of the children of the deceased as may have been actually damaged by her death; and those who have joined in bringing the suit are those, as we may presume, who supposed themselves damaged; and if there be others who have not joined, it cannot prejudice the rights of those who have. Nor is it a matter of which the defendant Deford can complain, that all the children are not joined, for he is subject to but one action, for and in respect of the same subject matter of complaint; and the jury can only 'give such damages as they may think *proportioned to the injury,* resulting from such death, to the parties respectively, *for whom and for whose benefit such action shall be brought;*' and not to all the children, or even to all those who might or could show themselves injured by the death, unless they join in bringing the action. 1 Code, 449, Art. 65, sec. 2."

*Id.* at 208 (emphasis in original). Further, with reference to the joinder of the adult daughter, the Court held:

"And the joinder of a party, as *cestui que use,* who may not be entitled to a portion of the damages awarded, should not be allowed to defeat or prejudice the rights of others who may be entitled. It is for the jury, in all such cases as this, to say whether the condition of the child, without reference to age, is one of such dependence upon the deceased parent, as to entitle it to damages in respect of the injury suffered."

*Id.*

The result of the omission of a beneficiary was stated in *State, u/o Bashe v. Boyce,* 72 Md. 140, 19 A. 366 (1890), where Judge McSherry, writing for this Court, said:

"[The 1852 Act] permits but one suit to be instituted against the same defendant for an injury resulting in death; and therefore all who have a right to unite as plaintiffs, but who omit to become parties, are excluded from bringing a subsequent action."

*Id.* at 143, 19 A. at 367.

Perkins's Notes to the *Deford case,* 30 Md. at 180, note (f), published in 1898, state, citing to *Boyce,* that the one-action clause prevents a second suit. Herbert Tiffany, writing in 1925 on death caused by negligence, states:

"The defendant is liable to but one action, but the non-joinder as equitable parties of one or more who might have sued, can not prejudice the rights of those who do sue; and the joinder of a party as an equitable plaintiff who may not be entitled to recover, does not defeat or prejudice the rights of others who may be entitled."

1 Poe, *Pleading and Practice* § 453, at 441 (5th Tiffany ed.1925). More recently, Matthew Bender & Co., *Maryland Tort Law Handbook* § 13.2 (2011), states that "[j]oinder of *all* potential plaintiffs, however, is not a requirement to maintaining the suit." (Emphasis in original).

▉ Thus, the one-action clause, that has been in the wrongful death statute since 1852 without substantial change, is not a basis for dismissing an original plaintiff's claim for failure to identify a potential beneficiary as a use plaintiff.

▉ UMMSC submits, in response to the *Deford* and *Boyce* cases, that they have been overruled, implicitly, by *Walker v. Essex,* 318 Md. 516, 569 A.2d 645 (1990), and *Ace Am. Ins. Co. v. Williams,* 418 Md. 400, 15 A.3d 761 (2011). *Walker* stands for the proposition that a use plaintiff, who was not identified in the suit as filed, but who asserts his or her claim within the window of the three year condition precedent, and before any judgment has been entered for the original plaintiffs, must be joined. On appeal from an unenrolled judgment, the remedy applied in *Walker* was to enlarge the set of claimants seeking damages, not to dismiss the original plaintiffs.

The deceased in *Walker* died on February 9, 1986. He was survived by two sons by different mothers. One son, Lupe, sued through his mother in February 1987 and agreed upon a settlement in March. Before it was consummated, the defendant's insurer learned of the half-brother, Marcus, and resisted paying. Lupe amended the complaint to add Marcus as a use plaintiff, and moved to enforce the settlement. Marcus sought to intervene. At a hearing in August 1987, the circuit court entered judgment for Lupe in the amount of the settlement, and it also allowed intervention. Thus, the trial judge was prepared to let Marcus pursue his wrongful death claim after judgment had been entered on Lupe's wrongful death claim. The trial court refused to open the judgment, as requested by Marcus, and he appealed.

This Court vacated the judgment for Lupe and remanded. We applied the one-action rule, describing it as designed "to protect a defendant from being vexed by several suits instituted by or on behalf of different equitable plaintiffs for the same injury, when all the parties could be joined in one proceeding." *Walker*, 318 Md. at 523, 569 A.2d at 648. The claims were not severable in that they could not be tried in separate actions, against the same defendant, as the trial judge considered them to be. Rather, "[a] judgment should not have been entered in the circuit court unless it included the interests of all the *known* beneficiaries." *Id.* at 524, 569 A.2d at 648 (emphasis added). This is because "[t]he statutory language does not allow a judgment for one of the beneficiaries to be made a matter of record, as by its very nature, other claims are forever foreclosed or barred." *Id.* at 523–24, 569 A.2d at 648.

*Ace v. Williams*, like *Walker*, recognized the viability of claims of known beneficiaries who asserted their rights within three years of the decedent's death, but who had not been accounted for in a settlement that was reduced to judgment. *Ace* extended the holding of *Walker* by reopening an enrolled judgment in order to permit resolution of the claims of the omitted beneficiaries.

In that case, the deceased was struck and killed by a motor vehicle on September 12, 2002. He was survived by two sons from a prior marriage (Group One) and by his widow and their two sons (Group Two). Group Two sued on May 14, 2003 (*Williams I* ). Their complaint identified Group One in the background allegations, but did not name them as use plaintiffs. *Ace,* 418 Md. at 407, 15 A.3d at 765. Group Two negotiated a settlement under which the principal contributor was Ace, the deceased's underinsured motorists coverage carrier. Ace insisted, *inter alia,* that Group One be named as use plaintiffs. Counsel for Group Two prepared an amended complaint, so providing, that was served on Group One, *id.* at 411, 15 A.3d at 767, but there was no record of its having been filed in court. Group Two petitioned for court approval of the settlement that excluded Group One, but that petition was not served on Group One. By an order docketed May 19, 2005, the court approved the settlement of *Williams I,* and declared all claims stemming from the death of the decedent to be satisfied. Group Two filed an order of satisfaction on June 6, 2005. *Id.* at 414–15, 15 A.3d at 769.

On July 21, 2005, about a month and a half before the third anniversary of the deceased's death, Group One filed suit against, *inter alia,* Ace (*Williams II* ).[6] *Id.* at 415, 15 A.3d at 769.

Group One asked that the judgment in *Williams I* be opened and that that case be consolidated with *Williams II. Id.* at 420, 15 A.3d at 772. The circuit court refused to do so, and entered summary judgment in *Williams II* for Group Two. On cross-appeals, the Court of Special Appeals vacated the enrolled judgment in *Williams I* and reversed the summary judgment in *Williams II. Williams v. Work,* 192 Md. App. 438, 995 A.2d 744 (2010). It reasoned:

---

**6.** Group One was represented in *Williams II* by the same attorney who had represented Group Two in *Williams I.* This did not escape the attention of this Court, 418 Md. at 426–27, 15 A.3d at 776, or the Court of Special Appeals, *Williams v. Work,* 192 Md.App. 438, 468, 995 A.2d 744, 762 (2010).

"Although Rule 15–1001(b) does not require formal joinder, the failure to include a known statutory beneficiary as a plaintiff or a 'use plaintiff' in a wrongful death action and to settle without providing for that beneficiary can be analogized to the failure to join a necessary party in an action where joinder is required. In our view, because of the one action rule, the failure to do so is a 'defect' or 'mistake' of jurisdictional proportions in the proceeding, which may be raised at any time."

*Id.* at 455–56, 995 A.2d at 755.

This Court, on certiorari review, affirmed. We selectively quoted portions of the Court of Special Appeals' opinion, including the rationale set forth above.

■ *Ace* does not support UMMSC's position in the case before us. Ace does not hold that the original plaintiffs, Group Two, lost their *claims* because known beneficiaries, Group One, had not been identified as use plaintiffs in *Williams I.* Although the settlement, *i.e.,* the judgment in *Williams I,* was vacated in *Ace,* and the judgment in *Williams II* was reversed, *Williams v. Work,* 192 Md.App. at 468, 995 A.2d at 762, the entire matter was remanded for further proceedings to which the original plaintiffs and the use plaintiffs, who had joined the action, would be parties. Further, *Ace* does not affect the long recognized condition precedent that requires a beneficiary to sue within three years of death. In the case *sub judice,* Ricky did not do so.[7] Consequently, Ricky's claim has expired.

### Relation Back

■ The Mutis contend that the trial court erred by not applying the doctrine of relation back and treating Ricky as having been named as a use plaintiff when the Mutis filed their action.[8] Relation back cannot be applied in this case,

---

7. In *Ace,* the original plaintiffs, Group Two, knew both the identity and location of the use plaintiffs, Group One.

8. We shall exercise our discretion under Rule 8–131(a) and consider this question even though the Mutis did not file an amended complaint

however, because Ricky's claim has expired by operation of the three year condition precedent.

Judge Kaufman so held, applying Maryland law, in *Knauer v. Johns–Manville Corp.*, 638 F.Supp. 1369 (D.Md.1986). *Knauer* was an occupational disease case, decided under what is now CJ § 3–904(g)(1).[9] George Knauer and Ann Knauer, his wife, sued thirteen asbestos manufacturers on December 26, 1980, alleging that George had contracted mesothelioma. Ann joined in the action as a plaintiff in the claim for damage to their marital relationship. See *Deems v. Western Md. Ry. Co.*, 247 Md. 95, 231 A.2d 514 (1967). George died on May 1, 1982. On May 6, 1985, three years and five days after George's death, Ann moved to amend the complaint to assert, *inter alia,* a wrongful death claim. Although Fed.R.Civ.P. 15(c) expressly recognizes that amendments relate back to the date of the original pleading, the court held that relation back could not be applied to the wrongful death claim because to do so would violate a fundamental precept of diversity jurisdiction jurisprudence, in that relation back would produce a result contrary to the result that would be reached by a state court applying the substantive law of Maryland. Citing *Smith v. Westinghouse Elec. Corp.*, 266 Md. 52, 291 A.2d 452 (1972); *Slate v. Zitomer*, 275 Md. 534, 341 A.2d 789; and *Trimper v. Porter–Hayden*, 305 Md. 31, 501 A.2d 446, the federal court recognized that, under Maryland law, the "[f]ailure to bring suit within the statutory three-year period bars both the remedy and the right to sue." *Knauer*, 638 F.Supp. at 1375.

Judge Kaufman correctly analyzed Maryland law.[10] Thus, unless the Plaintiffs' action was properly dismissed as a sanc-

---

identifying Ricky as a use plaintiff, or, if required, clearly ask the trial court for leave to file such an amended complaint. See Rule 2–341(a).

**9.** Chapter 374 of the Acts of 1986 first added subsection (2) to § 3–904(g), dealing with occupational disease cases, effective July 1, 1986.

**10.** The Mutis refer us to two decisions of the United States District Court for the District of Maryland as illustrations of relation back applied after the time had run for asserting a wrongful death claim. When the decedent in *Smith v. Potomac Edison Co.*, 165 F.Supp. 681

tion for a Rules violation, the Mutis' claims can proceed, while Ricky's unasserted claim cannot.

The Court of Special Appeals has recognized, in considered dicta, that wrongful death beneficiaries may be treated separately when applying CJ § 3–904(g)(2). *See Benjamin v. Union Carbide Corp.*, 162 Md.App. 173, 873 A.2d 463 (2005),

---

(D.Md.1958), was killed, a wrongful death action was to be asserted in the name of the State of Maryland, and the condition precedent was eighteen months from death. In a complaint that was timely filed, the widow and infant daughter of the deceased claimed damages for loss of care, support, and maintenance in the name of the widow. After eighteen months had run, the widow sought leave to amend in order to bring the action in the name of the State, and the defendant opposed. The equitable plaintiffs, the facts alleged, the nature of the alleged cause of action, and the measure of damages remained the same in the proposed amended complaint as in the original complaint. "The only change is in the nominal plaintiff." *Id.* at 685. It was in this context that Judge Thomsen said that the amendment would relate back to the filing of the suit. Under the court's analysis, the substance of the wrongful death claim had been timely filed.

The Mutis also refer us to an unreported opinion by Judge Bredar in *Daniel v. Hines*, Civil No. JKB–10–2757 (Oct. 4, 2011). There, the widow and two children of the deceased timely filed. The deceased was also survived by his parents who were not named as use plaintiffs, because they deliberately did not wish to claim (quite possibly to maximize any recovery for their daughter-in-law and grandchildren from available assets of the defendant). Apparently concerned by *Williams v. Work*, 192 Md.App. 438, 995 A.2d 744, the original plaintiffs sought to amend by adding the deceased's parents as use plaintiffs more than three years after the death. The defendants contended that naming all use plaintiffs was a condition precedent to maintaining the action, but the court held that Maryland Rule 15–1001(b) was procedural. That conclusion is consistent with our opinion.

The court in *Daniel* then held that Fed.R.Civ.P. 19 mandated the joinder of all required parties "even to the point of making them involuntary plaintiffs if they do not wish to join the action." Opinion at 365, 44 A.3d at 384. The federal court thought that parents were required parties because, under Maryland law, "any judgment rendered in their absence would be invalid[.]" Opinion at 364 n. 1, 44 A.3d at 383 n. 1. As explained above, we do not agree. The court in *Daniel* did not cite Judge Kaufman's opinion in *Knauer*, 638 F.Supp. 1369, or *Deford*, 30 Md. 179. What is more fundamental, if the rule were that a judgment could be invalidated at the instance of an omitted use plaintiff, although the three year condition precedent for asserting that claim had not been satisfied, any judgment or settlement would be subject, in perpetuity, to the theoretical risk of loss of finality. That result takes the one-action rule to an unreasonable extreme. A judgment or satis-

*aff'd sub nom. Georgia–Pacific v. Benjamin,* 394 Md. 59, 904 A.2d 511 (2006). In that occupational disease case, the claimants were the widow and two children of the deceased.[11] There was a dispute of material fact sufficient to overturn a summary judgment for the defendants on the issue of discovery of the wrongful death action. When remanding, the Court of Special Appeals advised the trial court as follows:

> "In the present case, there is no evidence that the children of the decedent were on inquiry notice any earlier than appellant. At trial, however, the fact finder might resolve the factual issue of notice differently as to each claimant. For the benefit of the court on remand, we express our view that the knowledge of each claimant is determinative as to that claimant. The knowledge of one claimant is not imputed to the other claimants."

*Benjamin,* 162 Md.App. at 206, 873 A.2d at 482.

## Rule 15–1001

■ The fact remains that the Plaintiffs violated Rule 15–1001(b) when they did not identify Ricky as a use plaintiff. UMMSC alternatively argues that the violation of Rule 15–1001(b), on which the circuit court relied, automatically results in dismissal of the Plaintiffs' claims because Rule 15–1001(b) creates a condition precedent to the Plaintiffs' claims which must be satisfied within three years of Elliott's death. We have seen, however, that when the wrongful death statute was enacted, it did not impose such a condition, and this Court could not substantively alter a beneficiary's right by a rule of procedure. *See* Md. Const., Art. IV, § 16. We view the addition, by rule, of a second *automatic* limitation on the nature of the right to sue to be a substantive change.

That is not to say that this Court may not, by a rule of procedure, create reasonable requirements governing the *exercise* of the statutory right. That was done in Rule 15–1001(b), which does not spell out the consequences of failure to

faction should not be opened to permit assertion of a claim that no longer exists.

11. We infer that the children were adults.

comply with it. When a rule is violated that does not provide for the consequences of the noncompliance, the consequence is determined "in light of the totality of the circumstances and the purpose of the rule." Rule 1–201(a).

■ Here, the evidence under oath from the three Mutis is that Ricky, if living, is older than Tom, who was thirty-one years old when this action was dismissed. There has been no contact between the Plaintiffs and Ricky for many years, and his whereabouts are unknown. It is against that evidentiary background that we analyze the purpose of Rule 15–1001 and the circumstances of the non-compliance.

### Purpose of Rule

■ The purpose of the rule is to implement the one-action provision in the statute. The purpose of that provision "is to protect a defendant from being vexed by several suits instituted by or on behalf of different equitable plaintiffs for the same injury *when all of the parties could be joined in one proceeding.*" *Walker v. Essex,* 318 Md. at 523, 569 A.2d. at 648 (emphasis added). When the Mutis' claims were dismissed, Ricky could not be joined. His claim, if any, had expired.

### Prejudice to Ricky

It is difficult to consider how a claim by Ricky could have any value, even if it were timely asserted. Given the estrangement between the Giuseppina and Bertha households, it would require a state of facts bizarre in the extreme for Ricky to establish damages of any kind under these facts.

### Prejudice to UMMSC

At the time when this case was dismissed, there could be no prejudice to UMMSC, because Ricky's claim was extinguished. The Defendant's argument, that it would be required to undertake, and to respond to, additional discovery was in reply to the Plaintiffs' contention that relation back should be applied. We have held, *supra,* that relation back does not

apply to wrongful death claims barred by the three year condition precedent.

### Duty of the Plaintiffs

The Mutis should have identified Ricky as a use plaintiff. Lack of knowledge of his whereabouts did not prevent compliance.

Certified mail notice to the use plaintiff's last known address, per Rule 15–1001(c), is a new requirement. *See* Reporter's Note, 22 Md. Reg., Issue 24 (Nov. 25, 1995). In the 1852 Act, the original plaintiff was required to deliver to the defendant, or to the defendant's attorney, full particulars of the persons on whose behalf the action was brought. That provision was "merely directory, and in nowise affect[ed] the right of the plaintiff to maintain the suit," *Philadelphia, Wilmington & Balt. R.R. Co. v. State, u/o Bitzer,* 58 Md. 372, 398 (1882). In the "Q" Rules, effective January 1, 1962, the plaintiff was required to state in the original pleading the names and last known addresses of all persons "who are or may be entitled by law to recover." Former Rule Q42. These provisions of the 1852 Act and former Rule Q42 seemed to put the onus on the defendant to fend for itself in achieving the benefit of the one-action rule.

Rule 15–1001 does not bring forward, in express terms, the former Rule Q42 requirement that the names and addresses of all beneficiaries be stated in the original pleading. This is because Rule 15–1001(b) requires that "all persons who are or may be entitled by law to damages" be named as plaintiffs. Those beneficiaries who do not join are to be named as use plaintiffs. The Rules Committee considered that Rule 15–1001(b) would be read in conjunction with Rule 1–301(a). *See* Reporter's Note, 22 Md. Reg., Issue 24 (Nov. 24, 1995). Rule 1–301(a) in pertinent part provides:

> "An original pleading shall contain the names and addresses, including zip code, of all parties to the action if the names and addresses are known to the person filing the pleading. If the address of a party is unknown, the pleading shall so state."

Thus, what the Mutis need only have done is state in their complaint that any address for use plaintiff Ricky was unknown.

It is important to note that, before that representation can be made by a plaintiff's counsel, counsel's duty of candor to the court requires that a good faith and reasonably diligent search first be made.[12]

■■■ In cases in which the identity and location of the beneficiaries is known by the original plaintiffs, there ordinarily should be no difficulty in complying with Rule 15–1001. In cases where the whereabouts of an identified beneficiary are unknown, compliance with the steps outlined above, *i.e.*, identification of the use plaintiff, a bona fide and reasonably diligent search, and advising the court if the original plaintiff has been unable to find a last known address for the use plaintiff, ordinarily should satisfy whatever obligations an original plaintiff has to a use plaintiff that can be derived from the CJ § 3–904 or Rule 15–1001.

### Some Considered Dicta

No party to the instant case argues that Ricky should be deemed timely to have sued on the theory that, when the Mutis timely sued, they also represented Ricky whom they should have identified as a use plaintiff. We are nevertheless constrained to clarify some language in *Williams v. Work* and in *Ace v. Williams* that should not be read as producing that result.

In *Work*, the Court of Special Appeals said:

"In common law pleading, a 'use plaintiff'; is '[a] plaintiff for whom action is brought in another's name.' Black's Law Dictionary, 7th Ed., p. 1547. As explained above, Rule 15–1001(b) requires that all the statutory beneficiaries be made plaintiffs in a wrongful death action, whether or not they join. When they do not join in the action, they are identi-

---

**12.** It would also have been prudent for the Mutis' counsel to have filed an affidavit describing the efforts made to locate Ricky.

fied as 'use plaintiffs' and the action proceeds to their use or benefit. All known beneficiaries must be 'plaintiffs' under the rule and the court is put on notice that any recovery is for the benefit of all plaintiffs, joined or otherwise, in accordance with their statutory interest, whether that interest is represented by an award of damages as the result of a trial, Cts. & Jud. Proc. § 3–904(c), or by a settlement, *Walker*, 318 Md. at 518, 569 A.2d [at 645]. Notice to the use plaintiffs is required, but the duty owed to them as plaintiffs extends beyond mere notice. That continuing duty is, in our view, made clear in *Walker*, 318 Md. at 524, 569 A.2d [at 648], where the Court explained that the claims of beneficiaries in such actions are not severable. As the Court stated: 'A judgment should not have been entered in the circuit court unless it included the interests of all of the known beneficiaries.' *Id.*"

*Work*, 192 Md.App. at 460–61, 995 A.2d at 758 (footnote omitted).

Our opinion in *Ace* did not incorporate the above passage, but we did say:

"To interpret the Rule as simply a notice rule disregards: (1) the representative nature of wrongful death actions; (2) the language of Rule 15–1001(b), requiring that 'all persons who are or may be entitled by law to damages by reason of the wrongful death shall be named as plaintiffs whether or not they join in the action[;]' and (3) the provisions of Cts. & Jud. Proc. § 3–904(c) relating to the award of damages to the statutory 'beneficiaries' 'proportional to injury resulting from the wrongful death.' "

*Ace*, 418 Md. at 424, 15 A.3d at 775.

The above passages were written in cases in which the wrongful death claim was affirmatively asserted by particular beneficiaries themselves who had been omitted as use plaintiffs by the original plaintiffs. In addition, those omitted use plaintiffs asserted their claims within three years of the deceased's death.

Even if Ricky had been identified as a use plaintiff when this action was filed, but did not "join" as a plaintiff within three years of Elliott's death, his identification as a use plaintiff would not permit him to join more than three years after Elliott's death. Rule 15–1001(b) distinguishes between those beneficiaries who join in the action for damages and those, the use plaintiffs, who do not. Use plaintiffs who wish to assert their respective claims for damages must timely join the action by indicating to the court and to the original parties in some clear fashion that they are claiming their "share." [13] Ordinarily, this is done by intervening. That procedure was spelled out in the "Q" Rules in Rule Q43. The structure of the current Rules of Procedure does not repeat in the Special Proceedings Rules procedures that are covered by Title 2. *See* Rule 1–101(b) ("Title 2 applies to civil matters in the circuit courts, except for Juvenile Causes ... and except as otherwise specifically provided or necessarily implied"). Intervention in wrongful death cases is now covered by Rule 2–214.

CJ § 3–904 and Rule 15–1001 cannot be construed to anoint counsel for the original (*i.e.* joined) plaintiffs as the attorney for the use plaintiffs as well. By designating potential beneficiaries as use plaintiffs, counsel demonstrates that he or she does not represent them and has no authority to make decisions for them or to present evidence, including proof of damages, on their behalf. To hold otherwise invites grave problems of conflict of interest. *See* R.T. Michael, *The "USE" Plaintiff in Maryland Wrongful Death Cases: Some Ethical Observations*, Fall 2008 Trial Reporter 9 (2008).

## Conclusion

On the record before us, there is no basis for inferring that Ricky was omitted as a use plaintiff for the purpose of hiding the litigation from him or in the hope that the Mutis would increase their recovery. Under the totality of the

---

13. Because a share is no more than the amount of damages under the pecuniary loss/benefit loss rule and/or the solatium rule that the trier of fact finds for a particular plaintiff, it is not an automatic award.

circumstances, we hold that the circuit court abused its discretion in dismissing the Plaintiffs' wrongful death claims as a sanction for the omission. Consequently, we shall remand this case to the circuit court. On remand, the court may consider in its discretion, what, if any, sanction for the omission is appropriate from the standpoint of reinforcing for the Bar as a whole the requirement for naming, as a use plaintiff, a potential beneficiary.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AS TO THE MOTION TO DISMISS ONLY. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THIS CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EVENLY BETWEEN THE PARTIES.